Paul M. De Marco (SBN 112834)
*pdemarco@msdlegal.com*
**MARKOVITS STOCK & DEMARCO, LLC**
119 East Court Street, Suite530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219

## IN THE UNITED STATES DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STEVEN JACKSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>PANDA RESTAURANT GROUP, INC.,<br><br>Defendant. | Case No. 2:24-cv-03928<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Steven Jackson ("Plaintiff"), individually and on behalf of all others similarly situated ("Class Members"), brings this Class Action Complaint against Panda Restaurant Group, Inc. ("Defendant" or "Panda"), and alleges, upon personal knowledge as to his own actions and his counsels' investigations, and upon information and belief as to all other matters, as follows:

### NATURE OF THE ACTION

1.      Plaintiff brings this class action against Defendant for its failure to properly secure and safeguard the personally identifiable information ("PII") of its current and former employees, including, but not limited to, their names, dates of birth, Social Security numbers, and financial account information.

2.    In the course of its hiring process, Defendant requires employees to entrust it with their sensitive, private PII. This practice is a standard and necessary procedure for Defendant's business, and Defendant could not perform its business activities but for the acquisition of its employees PII. Defendant collects PII from its employees and, upon information and believe, maintains that information in its system for at least many years, even after the employee-employer relationship has ended.

3.    By obtaining, collecting, using, and deriving benefit from Plaintiff's and Class Members' PII, Defendant assumed legal and equitable duties to those persons, and knew or should have known that it was responsible for protecting Plaintiff's and Class Members' PII from disclosure or criminal hacking activity.

4.    Defendant had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and Class Members, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access.

5.    Plaintiff and Class Members have taken reasonable steps to maintain the confidentiality of their PII.

6.    Plaintiff and Class Members reasonably expected and relied upon Defendant to keep their PII confidential and securely maintained, to use this information for business purposes only, and to make only authorized disclosures of this information.

7.    Defendant, however, breached its numerous duties and obligations by failing to implement and maintain reasonable safeguards; failing to comply with industry-standard data security practices and federal and state laws and regulations governing data security; failing to properly train its employees on data security measures and protocols; failing to timely recognize and detect unauthorized third parties accessing its system and that substantial amounts of data had been compromised; and failing to timely notify the impacted Class Members.

8.    Panda has confirmed that between March 7-11, 2024, criminals were able to access certain devices in Defendant's network (the "Data Breach"). These criminals

2

maintained unfettered access to Defendant's network and Plaintiff and Class Members PII for several days.

9.    In this day and age of regular and consistent data security attacks and data breaches, and given the sensitivity of the data entrusted to Defendant, this Data Breach is particularly egregious.

10.    By implementing and maintaining reasonable safeguards and complying with standard data security practices, Defendant could have prevented this Data Breach.

11.    Plaintiff and Class Members have suffered actual, concrete, and imminent injuries as a direct result of Defendant's data security failures and the Data Breach. The injuries suffered by Plaintiff and the Class Members as a direct result of the Data Breach include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (b) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (c) monetary costs associated with the detection and prevention of identity theft; (d) economic costs, including time and money, related to incidents of actual identity theft; (e) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (f) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (g ) the continued and substantial risk to Plaintiff and Class Members PII, which remains in the Defendant's possession of Defendant with in-adequate measures to protect Plaintiff's and Class Members' PII.

12.    Plaintiff seeks to remedy these harms, and prevent any future data compromise on behalf of himself and all similarly situated persons whose personal data was compromised and stolen as a result of the Data Breach and remains at risk due to inadequate data security.

13.    Accordingly, Plaintiff, on behalf of himself and the Class Members, asserts claims for negligence, negligence *per se*, breach of implied contract, unjust enrichment,

3

and violation of the California Unfair Competition Law (Cal. Bus. & Prof. Code §17200, *et seq.*). Plaintiff seeks injunctive relief, declaratory relief, monetary damages, and all other relief as authorized in equity or by law.

## THE PARTIES

*Plaintiff Steven Jackson*

14.    Plaintiff Steven Jackson is a natural person and resident and citizen of the State of Utah. Plaintiff Jackson received a Notice of Data Breach from Defendant, dated April 30, 2024, stating that his information, including his name, Social Security number, and date of birth, was accessed or acquired by an unauthorized party in the Data Breach.

*Defendant Panda Restaurant Group, Inc.*

15.    Defendant Panda Restaurant Group, Inc. is a California corporation with its principal place of business located in Rosemead, California.

## JURISDICTION & VENUE

16.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. 1332(d)(2). The matter in controversy exceeds $5,000,000 in the aggregate, exclusive of interest and costs. Further, Plaintiff alleges a nationwide class, and Plaintiff, as proposed Class Representative, is a citizen of a different state from Defendant.

17.    Venue is appropriate in this District under 28 U.S.C. § 1391(a) because Panda is based in this District, and because a substantial portion of the events giving rise to this cause of action occurred in this District.

## FACTUAL ALLEGATIONS

18.    Defendant Panda Restaurant Group, Inc. is a large corporate restaurant owner, operating as the "parent company of Panda Inn, Panda Express and Hibachi-San" nationwide restaurant chains.[1]

---

[1] Panda Restaurant Group, Inc., *About Us*, https://www.pandarg.com/about-us.html (last visited May 10, 2024).

19.    In the course of employing individuals to work at restaurant locations across the country, Defendant acquires, collects, and stores or processes a massive amount of PII belonging to current and former employees, including names, Social Security numbers, financial account number, payment card numbers, and dates of birth. Employees are required to provide this PII as a condition of their employment.

20.    Plaintiff and Class Members are current and former employees of Defendant.

21.    Defendant is fully aware of the sensitivity and value of the PII it stores and maintains.

22.    By requiring the production of, collecting, obtaining, using, and deriving benefits from Plaintiff's and Class Members' PII, Defendant assumed certain legal and equitable duties and knew or should have known that it was responsible for the diligent protection of the PII collected and stored.

23.    Defendant represents in its public facing Privacy Policy that ""[p]rotecting your personal information is important to us. We maintain administrative, technical, and physical safeguards designed to help protect against unauthorized use, disclosure, alteration, or destruction of the personal information we collect on our websites."[2]

***The Data Breach***

24.    On or about March 7-11, 2024, there was unauthorized access to Defendant's network that resulted in the unauthorized access to and acquisition of the sensitive PII contained therein.

25.    On or about April 30, 2024, Defendant sent a Notice Letter to Plaintiff and Class Members, which provides in pertinent part:

---

[2]  Panda Restaurant Group, Inc., *Privacy Policy* (Jan. 4, 2023), https://www.pandarg.com/privacy-policy.html (last visited May 10, 2024).

**WHAT HAPPENED?**

On March 10, 2024, Panda detected a data security incident that impacted certain corporate systems. The incident did not impact our in-store systems, operations or guest experience. Upon detecting this incident, we took immediate action to secure our environment, activated our remediation and recovery efforts, and launched a thorough investigation in partnership with third-party cybersecurity specialists to determine the nature and scope of the incident. We also worked with law enforcement.

After a thorough investigation, we determined that certain information maintained on our corporate systems was accessed by the unauthorized actor between March 7-11, 2024. With the support of third-party experts, we then began a thorough review of the data affected to identify the specific information and individuals impacted. On April 15, we concluded our review of impacted data and determined that your personal information was involved.

**WHAT INFORMATION WAS INVOLVED?**

The types of information involved include your first and last name, in combination with your SSN, Date Of Birth.

26.    Upon information and belief, as a result of Defendant's failure to take the necessary and required steps, and its failure to exercise reasonable care in the hiring, training, and/or supervision of its employees and agents, to secure Plaintiff's and Class Members' PII, criminal actors were able to infiltrate and gain access to Plaintiff's and Class Members' PII.

27.    Moreover, the Notice Letter omits numerous cirital details, including the identity of the cybercriminals who perpetrated the Data Breach, the root cause and vulnerabilities that gave rise to the Data Breach, and any remedial measures undertaken to prevent any future breaches of Defendant's systems.

28.    As a large and successful company, Defendant had the resources to invest in the necessary data security and protection measures. Yet, Defendant failed to exercise reasonable care in the hiring and/or supervision of its employees and agents and failed to undertake adequate analyses and testing of its own systems, adequate personnel training, and other data security measures to avoid the failures that resulted in the Data Breach.

29.    Defendant acknowledges both in its Notice Letter and in its Privacy Policy the importance of data security and the need to maintain the confidentiality of certain information. Defendant's Notice Letter advises Plaintiff and Class Members to take steps to monitor their accounts and mitigate any harm that may be caused by the Data Breach.

***The Data Breach & Associated Harms to Defendant's Customers Were Foreseeable***

30.    Defendant knew or should have known that it was an ideal target for hackers and those with nefarious purposes related to sensitive personal and financial data.

31.    It is common knowledge that the criminal(s) that target the type of PII at issue in this case attack the systems for the purpose of using that data to commit fraud, theft, and other crimes. Criminals acquire the data for the purpose of the selling or providing the PII to other individuals on the Dark Web for the purpose to commit fraud, identity theft, and other crimes. Consequently, Plaintiff and Class Members face a substantial risk for identity theft and the associated economic harms.

32.    Businesses that store personal information are likely to be targeted by cyber criminals. Credit card and bank account numbers are tempting targets for hackers, but credit and debit cards can be cancelled, quickly mitigating the hackers' ability to cause further harm. Instead, types of PII that cannot be easily changed (such as dates of birth, Social Security Numbers, and medical history) are the most valuable to hackers.

33.    According to the Federal Trade Commission ("FTC"), identity theft wreaks

havoc on consumers' finances, credit history, and reputation and can take time, money, and patience to resolve.[3] Identity thieves use stolen personal information for a variety of crimes, including credit card fraud, phone or utilities fraud, and bank and finance fraud.[4]

34.    Identity thieves may commit various types of crimes such as, *inter alia*, immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, fraudulently obtaining medical services, and/or using the victim's information to obtain a fraudulent tax refund.

35.    The United States government and privacy experts acknowledge that it may take years for identity theft to come to light and be detected.  Moreover, identity thieves may wait years before using the stolen data.

36.    The unauthorized disclosure of Social Security numbers can be particularly damaging. Criminals can, for example, use Social Security numbers to create false bank accounts or file fraudulent tax returns.[5] Victims of the Data Breach, including Plaintiff, will spend, and already have spent, time contacting various agencies, such as the Internal Revenue Service and the Social Security Administration. They also now face a real and imminent substantial risk of identity theft and other problems associated with the disclosure of their Social Security number and will need to monitor their credit and tax

---

[3] *See* Federal Trade Commission, *Taking Charge: What to Do If Your Identity is Stolen*, 3 (Apr. 2013), https://www.justice.gov/usao-wdmi/file/764151/download (last visited May 10, 2024).

[4] *See id.*  The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." 16 CFR §603.2(a). The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, social security number, date of birth, official State or government issued driver's license or identification number, alien registration number, government passport number, employer or taxpayer identification number."  16 CFR §603.2(b).

[5] When fraudulent tax returns are filed, the requirements for a legitimate taxpayer to file their tax returns with the IRS increase, including the necessity to obtain and utilize unique PIN numbers just to be able to file a tax return.

**CLASS ACTION COMPLAINT**

filings for an indefinite duration.

37.    And Social Security numbers cannot easily be replaced. In order to obtain a new Social Security number a person must prove, among other things, that he or she continues to be disadvantaged by the misuse. Thus, no new Social Security number can be obtained until the damage has been done.

38.    Furthermore, as the Social Security Administration ("SSA") warns:

> Keep in mind that a new number probably will not solve all your problems.  This is because other governmental agencies (such as the IRS and state motor vehicle agencies) and private businesses (such as banks and credit reporting companies) likely will have records under your old number.  Along with other personal information, credit reporting companies use the number to identify your credit record. So using a new number will not guarantee you a fresh start. This is especially true if your other personal information, such as your name and address, remains the same.

> If you receive a new Social Security Number, you shouldn't use the old number anymore.

> For some victims of identity theft, a new number actually creates new problems.  If the old credit information isn't associated with your new number, the absence of any credit history under your new number may make it more difficult for you to get credit."[6]

---

[6] Social Security Administration, *Identity Theft and Your Social Security Number*, SSA Publication No. 05-10064 (July 2021), http://www.ssa.gov/pubs/EN-05-10064.pdf (last visited May 10, 2024).

**CLASS ACTION COMPLAINT**

39.   The physical, emotional, and social toll suffered (in addition to the financial toll) by identity theft victims should not be underestimated.[7] "A 2016 Identity Theft Resource Center survey of identity theft victims sheds light on the prevalence of this emotional suffering caused by identity theft: 74 percent of respondents reported feeling stressed, 69 percent reported feelings of fear related to personal financial safety, 60 percent reported anxiety, 42 percent reported fearing for the financial security of family members, and 8 percent reported feeling suicidal."[8]

### The PII at Issue Here is Particularly Valuable to Criminals

40.   At an FTC public workshop in 2001, then-Commissioner Orson Swindle described the value of a consumer's personal information as follows:

> The use of third party information from public records, information aggregators and even competitors for marketing has become a major facilitator of our retail economy. Even [Federal Reserve] Chairman [Alan] Greenspan suggested here some time ago that it's something on the order of the life blood, the free flow of information.[9]

41.   Consumers rightfully place a high value not only on their PII, but also on the privacy of that data. Researchers have already begun to shed light on how much

_____

[7] Alison Grace Johansen, *4 Lasting Effects of Identity Theft*, LifeLock™ by norton (Feb. 4, 2021), https://lifelock.norton.com/learn/identity-theft-resources/lasting-effects-of-identity-theft (last visited May 10, 2024).

[8] *Id.*, citing Identity Theft Resource Center, *Identity Theft: The Aftermath 2016™* (2016), at 5, 18, archived at https://web.archive.org/web/20210715182447/http://www.idtheftcenter.org/images/page-docs/AftermathFinal_2016.pdf (last visited May 10, 2024).

[9] Federal Trade Commission, *The Information Marketplace: Merging and Exchanging Consumer Data* (Mar. 13, 2001), at 8, https://www.ftc.gov/sites/default/files/documents/public_events/information-marketplace-merging-and-exchanging-consumer-data/transcript.pdf (last visited May 10, 2024).

consumers value their data privacy – and the amount is considerable. Notably, one study on website privacy determined that U.S. consumers valued the restriction of improper access to their personal information – the very injury at issue here – between $11.33 and $16.58 per website. The study also determined that "[a]mong U.S. subjects, protection against errors, improper access, and secondary use of personal information is worth US$30.49 – 44.62."[10] This study was done in 2002, almost twenty years ago. The sea-change in how pervasive the Internet is in everyday lives since then indicates that these values—when associated with the loss of PII to bad actors—would be exponentially higher today.

42.    Companies recognize that PII are valuable assets. Indeed, PII are valuable commodities. A "cyber black-market" exists in which criminals openly post stolen PII on a number of Internet websites. Plaintiff's and Class Members' compromised PII has a high value on both legitimate and black markets.

43.    Some companies recognize PII as a close equivalent to personal property. Software has been created by companies to value a person's identity on the black market. The commoditization of this information is thus felt by consumers as theft of personal property in addition to an invasion of privacy.

44.    Because the information Defendant allowed to be compromised and taken is of such a durable and permanent quality, the harms to Plaintiff and the Class will continue and increase, and Plaintiff and Class Members will continue to be at substantial risk for further imminent and future harm.

### Defendant's Breached Industry Standards

45.    The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices. In 2016, the FTC

---

[10] Il-Horn Hann, Kai-Lung Hui, *et al*, *The Value of Online Information Privacy: Evidence from the USA and Singapore*, National University of Singapore (Oct. 2002), at 17, https://www.comp.nus.edu.sg /~ipng/research/ privacy.pdf (last visited May 10, 2024).

updated its publication *Protecting Personal Information: A Guide for Business*, which established cybersecurity guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of personal information that is no longer needed for authorized purposes; encrypt information stored on computer networks, understand their networks vulnerabilities; and implement policies to correct any security problems.[11]

46.     The FTC further recommends that companies not maintain PII and PHI longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords; use industry tested methods for security; monitor for suspicious activity on the network; and verify that third party providers, such as Bricker, have implemented reasonable security measures.[12]

47.     The FTC has brought enforcement actions against businesses for failing to protect customers' PII. The FTC has done this by treating a failure to employ reasonable measures to protect against unauthorized access to PII as a violation of the FTC Act, 15 U.S.C. § 45.

### Defendant's Post-Breach Activity Was (and Remains) Inadequate

48.     Immediate notice of a security breach is essential to protect victims such as Plaintiff and Class Members. Defendant failed to provide such immediate notice, in fact taking more than one month to disclose to victims that there had been a breach, thus further exacerbating the harm to Plaintiff and Class Members resulting from the Data Breach.

49.     There is no excuse for failing to timely notify victims of the breach.

50.     Moreover, Defendant acknowledges that it has gaps in its systems and is

---

[11] Federal Trade Commission, *Protecting Personal Information: A Guide for Business* (Oct. 2016), https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf (last visited May 10, 2024).

[12] Federal Trade Commission, *Start With Security: A Guide for Business: Lessons Learned from FTC Cases* (June 2105), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited May 10, 2024).

implementing changes to enhance its data security. However, Defendant does not indicate that it will be purging or deleting Plaintiff's data that is no longer needed for business operations. Until adequate systems are in place, and Plaintiff's and Class Members' data is deleted from Defendant's systems, future data breaches may again compromise Plaintiff's data.

51.    Plaintiff and Class Members are now and in future at a significant risk of imminent and future fraud, misuse of their PII, and identity theft as a result of Defendant's actions and the Data Breach.

### *Plaintiff Steven Jackson's Experience*

52.    Plaintiff Steven Jackson is a former employee of Defendant.

53.    Plaintiff Jackson received a Notice Letter from Defendant on or about April 30, 2024, informing him that his PII, including his name, Social Security number, and date of birth, was compromised in Defendant's Data Breach.

54.    Plaintiff Jackson is a reasonably cautious person with regard to his PII. He has never knowingly disclosed his PII over the internet in an unsecure fashion. He uses multi-factor authentication when it is offered on sensitive accounts, and uses strong and varied passwords for all of this accounts. When Plaintiff Jackson has physical documents with his sensitive information on them, he destroys those documents when he no longer needs them.

55.    Despite his caution, Plaintiff's PII was compromised as a result of this Data Breach due to no fault of his own.

56.    As a result of the Data Breach, Plaintiff has experienced an increase in the amount of spam he has received on both his phone and his email. Many of these spam messages are phishing attempts, tailored to attempt to steal even more of Plaintiff's information.

57.    As a result of the Data Breach, Plaintiff has had to expend significant time attempting to mitigate the damage done by the Data Breach, including time spent verifying the Data Breach, reviewing his credit report and financial statements, changing

account passwords, and investigating other steps he may need to take to secure his life and future.

58.     Plaintiff is now exposed to a substantial risk of future harm in addition to the concrete harms he has suffered so far, given that his PII is now in the hands of cyber criminals who will misuse that information, as that is the *modus operandi* of all cyber criminals.

59.     Plaintiff reasonably anticipates being forced to spend significant time, energy, and money in the future to mitigate the damage done by this Data Breach, and in the interim he will be forced to carry heightened stress and anxiety, despite the fact that it is not his fault his information has been compromised.

## CLASS ACTION ALLEGATIONS

60. Plaintiff brings this class action on behalf of himself and a nationwide class defined as:

**All persons who reside in the United States whose personal data was compromised as a result of the Data Breach that occurred on Defendant's systems from March 7-11, 2024 (the "Class").**

61.     Excluded from the Class are Defendant; officers, directors, and employees of Defendant; any entity in which Defendant has a controlling interest, is a parent or subsidiary, or which is controlled by Defendant; and the affiliates, legal representatives, attorneys, heirs, predecessors, successors, and assigns of Defendant. Also excluded are the judges and court personnel in this case and any members of their immediate families.

62.     Plaintiff reserves the right to modify and/or amend the Nationwide Class definition, including but not limited to creating additional Subclasses, as necessary.

63.     Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of the claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging

the same claims.

64.    All members of the proposed Class are readily ascertainable in that Defendant has access to addresses and other contact information for all members of the Class, which can be used for providing notice to Class Members.

65.    *Numerosity*. The Class is so numerous that joinder of all members is impracticable. Upon information and belief, the Class includes thousands of individuals whose personal data was compromised by the Data Breach.

66.    *Commonality*. There are numerous questions of law and fact common to Plaintiff and the Class, including the following:

- whether Defendant engaged in the wrongful conduct alleged in this Complaint;

- whether Defendant's conduct was unlawful;

- whether Defendant failed to implement and maintain reasonable systems and security procedures and practices to protect PII;

- whether Defendant failed to reasonably train and supervise its employees and agents to detect and avoid cyber attacks;

- whether Defendant unreasonable retained Plaintiff's and Class Members' PII;

- whether Defendant unreasonably delayed in notifying affected customers of the Data Breach;

- whether Defendant owed a duty to Plaintiff and members of the Class to adequately protect their personal data and to provide timely and accurate notice of the Defendant Data Breach to Plaintiff and members of the Class;

- whether an implied contract to provide Plaintiff and members Class adequate protection of their personal data;

- whether Defendant breached its duties to protect the personal data of Plaintiff and members of the Class by failing to provide adequate data security and failing to provide timely and adequate notice of the Defendant Data Breach to Plaintiff and the

15

Class;

- whether Defendant's conduct was negligent;

- whether Defendant knew or should have known that its computer systems were vulnerable to attack;

- whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the Data Breach of its systems, resulting in the loss of Class Members' personal data;

- whether Defendant wrongfully or unlawfully failed to inform Plaintiff and members of the Class that it did not maintain computers and security practices adequate to reasonably safeguard customers' financial and personal data;

- whether Defendant should have notified the public, Plaintiff, and Class Members immediately after it learned of the Data Breach;

- whether Plaintiff and members of the Class suffered injury, including ascertainable losses, as a result of Defendant's conduct (or failure to act);

- whether Defendant was unjustly enriched by obtaining and retaining PII without adequate business purposes and without adequate security measures;

- whether Plaintiff and members of the Class are entitled to recover damages; and,

- whether Plaintiff and Class Members are entitled to declaratory relief and equitable relief, including injunctive relief, restitution, disgorgement, and/or other equitable relief.

67.    ***Typicality***. Plaintiff's claims are typical of the claims of the Class in that Plaintiff, like all Class Members, had their personal data compromised, breached and stolen in the Data Breach. Plaintiff and all Class Members were injured through the uniform misconduct of Defendant described in this Complaint and assert the same claims for relief.

68.    ***Adequacy***. Plaintiff and counsel will fairly and adequately protect the interests of the Class. Plaintiff have retained counsel who are experienced in Class action

16

and complex litigation. Plaintiff has no interests that are antagonistic to, or in conflict with, the interests of other members of the class.

69. **Predominance**. The questions of law and fact common to Class Members predominate over any questions which may affect only individual members.

70. **Superiority**. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Moreover, absent a class action, most Class Members would find the cost of litigating their claims prohibitively high and would therefore have no effective remedy, so that in the absence of class treatment, Defendant's violations of law inflicting substantial damages in the aggregate would go unremedied without certification of the Class. Plaintiff and Class Members have been harmed by Defendant's wrongful conduct and/or action. Litigating this action as a class action will reduce the possibility of repetitious litigation relating to Defendant's conduct and/or inaction. Plaintiff knows of no difficulties that would be encountered in this litigation that would preclude its maintenance as a class action. Class certification is appropriate in that the prosecution of separate actions by the individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a class action conserves judicial resources and the parties' resources and protects the rights of each Class member. Specifically, injunctive relief could be entered in multiple cases, but the ordered relief may vary, causing Defendant to have to choose between differing means of upgrading its data security infrastructure and choosing the court order with which to comply. Class action status is also warranted because prosecution of separate actions by the members of the Class would create risk of adjudications with respect to individual members of the Class that, as a practical matter, would be dispositive of the interests of other members not parties to this action, or that would substantially impair or impede their ability to protect their interests.

71.    Class certification, therefore, is appropriate because the above common questions of law or fact predominate over any questions affecting individual members of the Class, and a class action is superior to other available methods for the fair and efficient adjudication of this controversy.

72.    Class certification is also appropriate because Defendant has acted and failed and refused to act in a manner that generally applies to all Class Members' PII in a manner, so final injunctive relief is appropriate with regard to the Class as a whole.

## COUNT I
### Negligence
### (On Behalf of Plaintiff and the Class)

73.    Plaintiff incorporates by this reference paragraphs 1 through 72 above.

74.    Plaintiff and Class Members were required to submit non-public PII in the course of their employment by Defendant.

75.    By collecting, storing, and using Plaintiff's and Class Members' PII, Defendant acquired and owed a duty to Plaintiff and Class Members to exercise reasonable care in obtaining, securing, deleting, protecting, and safeguarding the sensitive PII, that they were required to provide to Defendant as a condition of receiving Defendant's services, from being compromised, lost, stolen, accessed and misused by unauthorized persons. Defendant was required to prevent foreseeable harm to Plaintiff and the Class Members, and therefore had a duty to take reasonable steps to safeguard sensitive PII from unauthorized release or theft.

76.    More specifically, this duty included: (1) designing, maintaining, and testing Defendant's data security systems and data storage architecture to ensure Plaintiff's and Class Members' PII was adequately secured and protected: (2) adequately training and supervising its employees to detect and avoid cyberattacks; (3) implementing processes that would detect an unauthorized breach of Defendant's security systems and data storage architecture in timely and adequate manner; (4) timely acting on all warnings and

18

alerts, including public information, regarding Defendant's security vulnerabilities and potential compromise of the PII of Plaintiff and Class Members; (5) maintaining data security measurers consistent with industry standards and applicable federal and state laws and other requirements; (6) timely and adequately informing Plaintiff and Class Members if and when a data breach occurred to prevent foreseeable harm to them, notwithstanding undertaking (1)-(5) above; and (7) designing and implementing data storage, retention and deletion policies to destroy PII that is no longer necessary for the business purposes for which the data was provided.

77.    Defendant had a common law and legal duty to prevent foreseeable harm to Plaintiff and Class Members. The duty existed because Plaintiff and Class Members were the foreseeable and probable victims of Defendant's inadequate security practices in its affirmative collection and maintenance of PII from Plaintiff and Class Members. In fact, not only was it foreseeable that Plaintiff and Class Members would be harmed by the failure to protect their PII because hackers routinely attempt to steal such information for use in nefarious purposes, Defendant knew that it was more likely than not Plaintiff and Class Members would be harmed as a result.

78.    Defendant alone could have ensured that its security systems and data storage architecture were sufficient to prevent or minimize the Data Breach.

79.    There is a very close connection between Defendant's failure to follow reasonable security standards to protect its current and former users' personal data and the injury to Plaintiff and the Class. When individuals have their personal information stolen, they are at substantial risk for imminent identity theft, and need to take steps to protect themselves, including, for example, buying credit monitoring services and purchasing or obtaining credit reports to protect themselves from identity theft.

80.    If Defendant had taken reasonable security measures, data thieves would not have been able to access the personal information of Plaintiff and the Class Members. The policy of preventing future harm weighs in favor of finding a special relationship between Defendant and Plaintiff and the Class. If companies are not held accountable for

19

failing to take reasonable security measures to protect their customers' personal data, they will not take the steps that are necessary to protect against future security breaches.

81.    Defendant owed a duty to timely disclose the material fact that Defendant's computer systems and data security practices were inadequate to safeguard users' personal and financial data from theft.

82.    Defendant breached these duties by the conduct alleged in the Complaint by, including without limitation, failing to protect its customers' personal and financial information; failing to maintain adequate computer systems and data security practices to safeguard customers' personal and financial information; failing to train its employees to detect and avoid falling victim to cyberattacks; allowing unauthorized access to Plaintiff's and Class Members' PII; failing to disclose the material fact that Defendant's computer systems and data security practices were inadequate to safeguard customers' personal and financial data from theft; and failing to disclose in a timely and accurate manner to Plaintiff and members of the Class the material fact of the Data Breach; and improperly retaining data that was not necessary for the business purposes for which the data was provided.

83.    But for Defendant's wrongful and negligent breach of its duties owed to Plaintiff and Class Members, their PII would not have been compromised. Specifically, as a direct and proximate result of Defendant's failure to exercise reasonable care and use commercially reasonable security measures, the personal data of Defendant's customers was accessed by ill-intentioned criminals who could and will use the information to commit identity or financial fraud. Plaintiff and the Class Members face the imminent, certainly impending and substantially heightened risk of identity theft, fraud, and further misuse of their personal data.

84.    It was foreseeable that (1) Defendant's failure to safeguard the PII of Plaintiff and Class Members would lead to one or more types of injury to them; and (2) data breach at Defendant was foreseeable given the known high frequency of cyberattacks and data breaches in largescale employers, like Defendant.

85.     As a direct a proximate result of Defendant's negligence, Plaintiff and members of the proposed Class have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h ) the continued and substantial risk to Plaintiff and Class Members PII, which remains in the Defendant's possession of Defendant with in-adequate measures to protect Plaintiff's and Class Members' PII.

## COUNT II
### Negligence Per Se
### (On Behalf of Plaintiff and the Class)

86.     Plaintiff incorporates by this reference paragraphs 1 through 85 above.

87.     Pursuant to the FTC Act, 15 U.S.C. § 45, Defendant had a duty to provide fair and adequate computer systems and data security to safeguard the PII of Plaintiff and Class Members.

88.     The FTC Act prohibits "unfair . . . practices in or affecting commerce," which the FTC has interpreted to include businesses' failure to use reasonable measures to protect PII. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard. In addition, individual states have enacted statutes based upon the FTC Act that also created a duty.

89.    Pursuant to the Gramm-Leach-Bliley Act, Defendant had a duty to protect the security and confidentiality of Plaintiff's and Class Members' PII. *See* 15 U.S.C. § 6801.

90.    Pursuant to the FCRA, Defendant had a duty to adopt, implement, and maintain adequate procedures to protect the security and confidentiality of Plaintiff's and Class Members' PII. *See* 15 U.S.C. § 1681(b).

91.    Defendant solicited, gathered, and stored PII of Plaintiff and the Class Members to facilitate transactions which affect commerce.

92.    Defendant violated the FTC Act (and similar state statutes), FCRA, and the Graham-Leach-Bliley Act by failing to use reasonable measures to protect PII of Plaintiff and Class Members and not complying with applicable industry standards, as described herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII obtained and stored and the foreseeable consequences of a data breach on Defendant's systems.

93.    Defendant's violation of the FTC Act (and similar state statutes) as well as its violations of the FCRA, and the Graham-Leach-Bliley Act constitutes negligence *per se*.

94.    Plaintiff and the Class Members are within the class of persons that the FTC Act (and similar state statutes), the FCRA, and the Graham-Leach-Bliley Act were intended to protect.

95.    The harm that occurred as a result of the breach is the type of harm the FTC Act (and similar state statutes), as well as the FCRA, and the Graham-Leach-Bliley Act were intended to guard against. The FTC has pursued enforcement actions against businesses, which, as a result of their failure to employ reasonable data security measures caused the same harm as that suffered by Plaintiff and the Class Members.

96.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiff and Class Members have suffered, and continue to suffer, damages arising from the

breach as described herein and are entitled to compensatory, consequential, and punitive damages in an amount to be proven at trial.

97.    As a direct and proximate result of Defendant's negligence and the data breach, Plaintiff and members of the proposed Class have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h) the continued and substantial risk to Plaintiff and Class Members PII, which remains in the Defendant's possession of Defendant with in-adequate measures to protect Plaintiff's and Class Members' PII.

## COUNT III
### Breach of Implied Contract
### (On Behalf of Plaintiff and the Class)

98.    Plaintiff incorporates by this reference paragraphs 1 through 97 above.

99.    Plaintiff and the Class Members delivered their personal and financial information to Defendant as part of the process of obtaining services provided by Defendant.

100.    Plaintiff and members of the Class entered into implied contracts with Defendant under which Defendant agreed to safeguard and protect such information and to timely and accurately notify Plaintiff and Class Members if and when their data had

23

been breached and compromised. Each such contractual relationship imposed on Defendant an implied covenant of good faith and fair dealing by which Defendant was required to perform its obligations and manage Plaintiff's and Class Members' data in a manner which comported with the reasonable expectations of privacy and protection attendant to entrusting such data to Defendant.

101.    In providing such data, Plaintiff and the other members of the Class entered into an implied contract with Defendant whereby Defendant, in receiving such data, became obligated to reasonably safeguard Plaintiff's and the other Class Members' sensitive, non-public information.

102.    In delivering their personal data to Defendant, Plaintiff and Class Members intended and understood that Defendant would adequately safeguard that data.

103.    Plaintiff and the Class Members would not have entrusted their private and confidential financial and personal information to Defendant in the absence of such an implied contract.

104.    Defendant accepted possession of Plaintiff's and Class Members' personal data for the purpose of employing Plaintiff and Class Members.

105.    Had Defendant disclosed to Plaintiff and Class Members that Defendant did not have adequate computer systems and security practices to secure users' and former users' personal data, Plaintiff and members of the Class would not have provided their PII to Defendant.

106.    Defendant recognized that its current and former customer's personal data is highly sensitive and must be protected, and that this protection was of material importance as part of the bargain to Plaintiff and Class Members.

107.    Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

108.    Defendant breached the implied contract with Plaintiff and Class Members by failing to take reasonable measures to safeguard their data.

109.    As a direct and proximate result of the breach of the contractual duties,

Plaintiff and members of the proposed Class have suffered actual, concrete, and imminent injuries. The injuries suffered by Plaintiff and the Class Members include: (a) the invasion of privacy; (b) the compromise, disclosure, theft, and unauthorized use of Plaintiff's and Class Members' PII; (c) economic costs associated with the time spent to detect and prevent identity theft, including loss of productivity; (d) monetary costs associated with the detection and prevention of identity theft; (e) economic costs, including time and money, related to incidents of actual identity theft; (f) the emotional distress, fear, anxiety, nuisance and annoyance of dealing related to the theft and compromise of their PII; (g) the diminution in the value of the services bargained for as Plaintiff and Class Members were deprived of the data protection and security that Defendant promised when Plaintiff and the proposed class entrusted Defendant with their PII; and (h) the continued and substantial risk to Plaintiff and Class Members PII, which remains in the Defendant's possession of Defendant with in-adequate measures to protect Plaintiff's and Class Members' PII.

## <u>COUNT IV</u>
**Unjust Enrichment**
**(On Behalf of Plaintiff and the Class)**

110.    Plaintiff incorporates by this reference paragraphs 1 through 109 above.

111.    Defendant failed to provide reasonable security, safeguards, and protections to the Sensitive Information of Plaintiff and Class Members, instead allowing an outdated system and inadequate training policies to persist which allowed the Data Breach to occur.

112.     Defendant further failed to implement adequate and necessary data retention policies that unnecessarily exposed Plaintiff and Class Members PII.

113.    Defendant benefited from the retention of Plaintiff and Class Members valuable data.

114.    Defendant failed to disclose to Plaintiff and Class Members that Defendant's business practices and data retention systems were inadequate to safeguard Plaintiff's and

25

the Class Members' Sensitive Information against theft, and that the PII would be retained indefinitely regardless of when the original business purpose was completed.

115.   Under principles of equity and good conscience, Defendant should not be permitted to retain the money provided to Defendant for its services which belongs to Plaintiff and Class Members because Defendant failed to provide adequate safeguards and security measures to protect Plaintiff's and Class Members' Sensitive Information. Accordingly, Plaintiff and the other Class Members paid for services that they did not receive.

116.   Moreover, under principles of equity and good conscience, Defendant should not be permitted to retain the valuable PII that was provided to Defendant for its services which belongs to Plaintiff and Class Members; where Defendant has no necessary business use of the data related to the services it contracted with Plaintiff and Class Members; and where Defendant failed to provide adequate safeguards and security measures to protect Plaintiff's and Class Members' Sensitive Information.

117.   Accordingly, Plaintiff and the other Class Members paid for services that they did not receive. And Defendant wrongfully accepted and retained these benefits (money and valuable PII) to the detriment of Plaintiff and Class Members.

118.   Defendant's enrichment at the expense of Plaintiff and Class Members is and was unjust.

119.   As a result of Defendant's wrongful conduct, as alleged above, Plaintiff and the Class Members are entitled to restitution and disgorgement of all profits, benefits, and other compensation obtained by Defendant, as well as the PII provided to Defendant, plus attorneys' fees, costs, and interest thereon.

## <u>COUNT IV</u>
**Violation of the California Unfair Competition Law,<br>Cal. Bus. & Prof. Code §17200 *et seq*.<br>(On Behalf of Plaintiff and the Class)**

120.    Plaintiff incorporates by this reference paragraphs 1 through 119 above.

121.    Defendant is a "person" defined by Cal. Bus. & Prof. Code § 17201.

122.    Defendant violated Cal. Bus. & Prof. Code § 17200 et seq. ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

123.    Defendant's "unfair" acts and practices include:

   a.  by utilizing cheaper, ineffective security measures and diverting those funds to its own profit, instead of providing a reasonable level of security that would have prevented the hacking incident;

   b.  failing to follow industry standard and the applicable, required, and appropriate protocols, policies, and procedures regarding the encryption of data;

   c.  failing to timely and adequately notify Class Members about the Data Breach's occurrence and scope, so that they could take appropriate steps to mitigate the potential for identity theft and other damages;

   d.  Omitting, suppressing, and concealing the material fact that it did not reasonably or adequately secure Plaintiff's and Class Members' personal information; and

   e.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

124.    Defendant has engaged in "unlawful" business practices by violating multiple laws, including the FTC Act, 15 U.S.C. § 45, and California common law.

   a.  Defendant's unlawful, unfair, and deceptive acts and practices include:

   b.  Failing to implement and maintain reasonable security and privacy measures to protect Plaintiff's and Class Members' personal information, which was a direct and proximate cause of the Data Breach;

   c.  Failing to identify foreseeable security and privacy risks, remediate

27

identified security and privacy risks, which was a direct and proximate cause of the Data Breach;

d. Failing to comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45, which was a direct and proximate cause of the Data Breach;

e. Misrepresenting that it would protect the privacy and confidentiality of Plaintiff's and Class Members' personal information, including by implementing and maintaining reasonable security measures; and

f. Misrepresenting that it would comply with common law and statutory duties pertaining to the security and privacy of Plaintiff's and Class Members' personal information, including duties imposed by the FTC Act, 15 U.S.C. § 45.

125.    Defendant's representations and omissions were material because they were likely to deceive reasonable consumers about the adequacy of Defendant's data security and ability to protect the confidentiality of consumers' personal information. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and Class Members' were injured and lost money or property, which would not have occurred but for the unfair and deceptive acts, practices, and omissions alleged herein, time and expenses related to monitoring their financial accounts for fraudulent activity, an increased, imminent risk of fraud and identity theft, and loss of value of their personal information.

126.    Defendant's violations were, and are, willful, deceptive, unfair, and unconscionable.

127.    Plaintiff and Class Members have lost money and property as a result of Defendant's conduct in violation of the UCL, as stated herein and above.

128.    By deceptively storing, collecting, and disclosing their personal information, Defendant has taken money or property from Plaintiff and Class Members.

28

129. Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and Class Members' rights.

130. Plaintiff and Class Members seek all monetary and nonmonetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices or use of their personal information; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief, including public injunctive relief.

## **RELIEF REQUESTED**

Plaintiff, individually and on behalf of the Class, requests that the Court:

A.     Certify this case as a class action on behalf of the Class defined above, appoint Plaintiff as Class representative, and appoint the undersigned counsel as class counsel;

B.     Award declaratory, injunctive and other equitable relief as is necessary to protect the interests of Plaintiff and other Class Members;

C.     Award restitution, compensatory, consequential, and general damages, including nominal damages as allowed by law in an amount to be determined at trial;

D.     Award statutory damages to Plaintiff and Class Members in an amount to be determined at trial;

E.     Award Plaintiff and Class Members their reasonable litigation expenses and attorneys' fees to the extent allowed by law;

F.     Award Plaintiff and Class Members pre- and post-judgment interest, to the extent allowable; and

G.     Award such other and further relief as equity and justice may require.

## JURY TRIAL DEMANDED

Plaintiff demands a jury trial on all issues so triable.

Dated: May 10, 2024

By: */s/ Paul M. De Marco*
Paul M. De Marco (SBN 112834)
**MARKOVITS, STOCK & DEMARCO, LLC**
119 East Court Street, Suite 530
Cincinnati, Ohio 45202
Telephone: (513) 651-3700
Facsimile: (513) 665-0219
*pdemarco@msdlegal.com*

***Counsel for Plaintiff and the Proposed Class***

**CLASS ACTION COMPLAINT**